**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **JOSEPH GALVAN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 7:16-CV-147** |
| | § | |
| | § | |
| **FTS INTERNATIONAL SERVICES, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT FTS INTERNATIONAL SERVICES, LLC'S
BRIEF IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT**

John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone: 214-987-3800
Facsimile:  214-987-3926


AND


Ryan M. Miller
Texas Bar No. 24070281
ryan.miller2@ftsi.com
**FTS INTERNATIONAL SERVICES, LLC**
777 Main Street, Suite 3000
Fort Worth, TX 76102
Telephone: 817-339-3696


**ATTORNEYS FOR DEFENDANT
FTS INTERNATIONAL SERVICES, LLC**

## <u>TABLE OF CONTENTS</u>

PAGE

I.   STATEMENT OF NATURE AND STATE OF THIS CASE .................................................1

II.  SUMMARY OF ARGUMENT ...........................................................................................1

III. SUMMARY OF UNDISPUTED MATERIAL FACTS ........................................................2

    A.   FTSI and its Crews.......................................................................... 2

    B.   Galvan's Employment with FTSI ................................................... 2

    C.   Galvan's Job Duties as a Service Supervisor ................................ 3

    D.   The Distinction Between Plaintiff's Job Duties (and Compensation) and the "Crew" He Supervised ..................................................... 4

IV.  LEGAL ARGUMENTS AND AUTHORITIES ...................................................................5

    A.   Summary Judgment Standard of Review...................................... 5

    B.   Issue to Be Determined ................................................................ 5

    C.   Galvan Did Not Qualify for Overtime under the Fair Labor Standards Act. ............................................................................... 6

        1.   Galvan earned more than $100,000 per year as a Service Supervisor. ....... 7

        2.   Galvan regularly and customarily performed at least one of the duties of an executive employee. ................................................. 8

        3.   The "Silver" and "Red" crews were a recognized subdivision of FTSI, and managing it was Galvan's primary duty. .................................. 8

        4.   Galvan directed the work of two or more full-time employees. ............... 11

V.   CONCLUSION.............................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguirre v. SBC Commc'ns, Inc.*,
No. CIV.A. H-05-3198, 2007 WL 2900577 (S.D. Tex. Sept. 30, 2007), *aff'd*,
299 F. App'x 315 (5th Cir. 2008) ..........................................................................................11

*Allen v. Coil Tubing Servs., LLC*,
846 F. Supp. 2d 678 (S.D. Tex. 2012) *aff'd*, 755 F.3d 279 (5th Cir. 2014) ......6, 7, 8, 9, 10, 11

*Benavides v. City of Austin*,
No. A-11-CV-438-LY, 2012 U.S. Dist. LEXIS 193240 (W.D. Tex. 2012)........................6, 7

*Bollschweiler v. El Paso Elec. Co.*,
166 F. Supp. 3d 808 (W.D. Tex. 2016)................................................................................6, 7

*Carranza v. Red River Oilfield Servs., LLC*,
No. H-15-3631, 2017 U.S. Dist. LEXIS 11182 (S.D. Tex. 2017)............................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................................5

*Dalheim v. KDFW-TV*,
918 F.2d 1220 (5th Cir. 1990) .................................................................................................6

*Duffie v. United States*,
600 F.3d 362 (5th Cir. 2010) ...................................................................................................5

*Guyton v. Legacy Pressure Control*,
No. 5:15-cv-1075-RCL, 2017 U.S. Dist. LEXIS 7836 (W.D. Tex. 2017) ...........................6, 7

*King v. Stevenson Beer Distrib. Co.*,
11 F. Supp. 3d 772 (S.D. Tex. 2014) .......................................................................................9

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
203 F.3d 326 (5th Cir. 2000) ...................................................................................................6

*Olibas v. Barclay*,
838 F.3d 442 (5th Cir. 2016) ...................................................................................................6

*Zannikos v. Oil Inspections (USA), Inc.*,
605 F. App'x 349 (5th Cir. Mar. 27, 2015)...........................................................................6, 7

**Statutes**

29 U.S.C. § 207(a)(1)................................................................................................................6

29 U.S.C. § 213(a)(1)...........................................................................................6

Fair Labor Standards Act, 29 U.S.C. § 201 ..........................................1, 2, 5, 6, 9, 12

**Other Authorities**

29 C.F.R. § 541.100..............................................................................................7

29 C.F.R. § 541.100(a)..........................................................................................8

29 C.F.R. § 541.100(a)(2)......................................................................................9

29 C.F.R. § 541.102............................................................................................10

29 C.F.R. § 541.103(a)........................................................................................8, 9

29 C.F.R. § 541.601(a)...........................................................................................6

29 C.F.R. § 541.601(b)(1)......................................................................................6

29 C.F.R. § 541.601(b)(3)......................................................................................7

29 C.F.R. § 541.601(c).........................................................................................6, 7

29 C.F.R. § 541.700(a)...........................................................................................9

29 C.F.R. § 541.700(b)...........................................................................................9

Fed. R. Civ. P. 56..............................................................................................1, 5

Fed. R. Civ. P. 56(a).............................................................................................5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **JOSEPH GALVAN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 7:16-CV-147** |
| | § | |
| | § | |
| **FTS INTERNATIONAL SERVICES, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT FTS INTERNATIONAL SERVICES, LLC'S
<u>BRIEF IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure 56, Defendant FTS International Services, LLC ("FTSI") hereby submits its Brief in Support of its Motion for Final Summary Judgment to demonstrate that there are no genuine issues of material fact and FTSI is entitled to judgment as a matter of law.

## I.      <u>STATEMENT OF NATURE AND STATE OF THIS CASE</u>

Plaintiff Joseph Galvan ("Galvan") brings this lawsuit against FTSI, his former employer, claiming he was misclassified as exempt and is owed overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").  Discovery has been substantially completed, and FTSI seeks summary judgment on the sole claim in the case.

## II.      <u>SUMMARY OF ARGUMENT</u>

Galvan was a highly paid Service Supervisor who managed a crew performing well-completion services for FTSI's customers.  While business was booming, Galvan was apparently pleased with his six-figure income and supervisory job duties.  Yet, when the oil and gas industry experienced a downturn and while others lost their jobs, Galvan resigned.  Shortly thereafter, he hired an attorney to bring this case for overtime pay.

Galvan's overtime claim fails as a matter of law because he was exempt from overtime under the FLSA's highly compensated employee exemption. Galvan qualifies for the highly compensated employee exemption because he satisfied both the compensation and duties tests: (1) Galvan earned over $100,000.00 on an annual basis, and (2) Galvan regularly and customarily performed at least one of the duties of an executive employee.

Courts have found employees in similar positions exempt from overtime on multiple occasions. The result should be no different here.

### III.     SUMMARY OF UNDISPUTED MATERIAL FACTS

#### A.     FTSI and its Crews

FTSI is an oil and gas well completion services provider. App. 59 (Declaration of Karen Thornton ("Thornton Decl.") at ¶ 2). Exploration and production companies rely on FTSI's deep expertise and customized hydraulic fracturing solutions to enhance their recovery rates from oil and gas wells, primarily in unconventional plays. *Id.* FTSI's well completion services are available in Oklahoma, Pennsylvania, Texas, and surrounding areas, and FTSI crews generally work in specific geographic regions or "districts." *Id.* FTSI organizes its well completions staff into independent "crews," identified by a color and number, *e.g.,* "Red 1." *Id.* at ¶ 3. Each crew is led by a trained Service Supervisor, who typically manages 12-15 hourly workers. *Id.* Crews operating out of FTSI's Odessa, Texas district typically worked 14 days on and 7 days off. *Id.* Crews were scheduled to work 12-hour shifts. *Id.*

#### B.     Galvan's Employment with FTSI

FTSI hired Galvan as an Equipment Operator I on March 26, 2012. App. 6, 41-47 (Deposition of Joseph Galvan ("Galvan Dep.") at 21:4-18; Dep. Exhs. 1-2). FTSI promoted Galvan six times between March 2012 and April 2016, including Equipment Operator II and III, Fluid Technician I, Service Supervisor in Training (SSIT), and Service Supervisor I and II.

App. 48-53 (Galvan Dep. Exhs. 5-9, 11).   In March 2014, FTSI offered Galvan the job of Service Supervisor to run one of FTSI's Silver crews operating out of its Odessa, Texas district. App. 12, 52 (Galvan Dep. 43:1-17; Dep. Exh. 9).   Galvan accepted the Service Supervisor position with a compensation package that included a starting annual base salary of $75,000, plus a bonus on each completed stage. App. 12 (Galvan Dep. 44:1-21).   During the period he worked as a Service Supervisor, Galvan's annual compensation totaled well over $100,000 annually.   App. 17, 54-55 (Galvan Dep. 64:20-23, 65:4-17; Dep. Exhs. 12, 13).

**C.     Galvan's Job Duties as a Service Supervisor**

As a Service Supervisor, Galvan's primary duties included:   (1) providing on-site supervision for all well completion jobs; (2) acting as FTSI's representative in dealings with customers on site; (3) overseeing all crew activities from home base to servicing at the job locations to return to home base; and (4) treating the well from the data van.  App. 12-13, 20,  at 42:18-25, 56-58 (Galvan Dep. 46:18-22, 74:14-23; Dep. Exh. 17); App. 59 (Thornton Decl. at ¶ 4).  The crews Galvan managed were usually comprised of the following hourly crew members: 1-2 Mechanics, an E-Tech, and 10-15 Equipment Operators. App. 19 (Galvan Dep. 72:18-73:4).

The Equipment Operators supervised by Galvan performed manual-labor duties.  App. 60 (Thornton Decl. at ¶ 9).  Equipment Operators set up equipment ("rigging up"), ran equipment to treat the well, and took down equipment ("rigging down").   *Id.* Equipment Operators also cleaned and maintained equipment.   *Id.*   Galvan was not expected to routinely perform manual labor.   App. 60 (Thornton Decl. at ¶ 7); App. 56-58 (Galvan Dep. Exh. 17).   Galvan was expected to perform manual labor only to lead by example and demonstrate techniques or to assist on an emergency basis.   *Id.*   Instead, Galvan directed the work of Equipment Operators, was responsible for millions of dollars of equipment, answered questions from Equipment

Operators, enforced company policies, and had the authority to stop work.   App. 22-23 (Galvan

Dep. 83:2-22, 85:22-86:5, 88:9-11).

Galvan spent significant time in the data van treating the well and communicating with

the on-site customer representative.   App. 16, 20, 30-31 (Galvan Dep. 60:12-23, 74:14-23, 117-

19-118:1).   The data van is "like an office" on wheels.   *Id.* at 60:12-23.  Treating the well

involves controlling the fluids going down well by using computers in the data van and

instructing hourly employees on what tasks needed to be completed.   App. 16 (Galvan Dep.

60:12-23).  The data van is a mobile office that has air conditioning, chairs, a window, radios and

specialized computers.  App. 59 (Thornton Decl. at ¶ 5).   Galvan regularly communicated with

his crew via radio from inside the data van; he had a view of both the wellsite and his crew

through the data van's window.   App. 16 (Galvan Dep. 62:1-23).   Galvan addressed any

questions or job-related requests from the data van via radio.  *Id.*

**D.    The Distinction Between Plaintiff's Job Duties (and Compensation) and the "Crew" He Supervised**

Galvan received specialized training to treat the well from the data van; his subordinates

were not trained to treat the well.   *Id.* at 59:4-14.   As such, he was the only one on the crew

qualified to perform certain essential job functions while on-site.   *Id.*   Galvan was the highest-

ranking operations employee on location and he decided what tasks he would perform during his

shifts.  App. 22 (Galvan Dep. 82:8-11; 85:19-24).

Unlike the hourly employees he supervised, Galvan received FTSI-issued equipment

including a cell phone, a computer, and a pickup truck. App. 13 (Galvan Dep. 47:25-48:21).

Also unlike his subordinates, Galvan was paid a salary and was eligible to earn bonuses.  App. 12

(Galvan Dep. 44:10-45:9).   According to Galvan, he was "the one running the show."   *Id.* at

42:18-25.  Notably, Galvan's own immediate supervisor was away from the job site at least 50%

of the time.  App. 14 (Galvan Dep. 52:1-21).  Even when a Field Coordinator was on the job site, Galvan was usually the highest-ranking operations employee there and maintained his authority to direct the work of his crew.  App. 22 (Galvan Dep. 82:8-11, 85:19-24).  When his supervisor was not on location, Galvan was expected to keep him informed about the status of the job. When his supervisor was on location, Galvan continued to direct the work of his crew.  App. 24-25 (Galvan Dep. 92:14-19, 94:22-99:1).

## IV.   LEGAL ARGUMENTS AND AUTHORITIES

### A.  Summary Judgment Standard of Review

Summary judgment for FTSI is appropriate "if [it] shows that there is no genuine dispute as to any material fact and [it] is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Galvan "cannot survive a summary judgment motion by resting on the mere allegations of [his] pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  Instead, he has the burden to "identify specific evidence in the record and articulate how that evidence supports [his] claim."  *Id.* (internal quotations and citation omitted).

### B.   Issue to Be Determined

The sole issue to be ruled upon in FTSI's Motion for Summary Judgment is whether the FLSA's highly compensated employee exemption applies to Galvan, proving that he is not entitled to overtime compensation.

**C.    Galvan Did Not Qualify for Overtime under the Fair Labor Standards Act.**

The FLSA generally "requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek." *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016) (*quoting Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 282 (5th Cir. 2014) (citing 29 U.S.C. § 207(a)(1))).   There are, however, exemptions to the FLSA's overtime requirements. *Id*. (*citing Allen*, 755 F.3d at 282).   To determine whether a particular employee qualifies for an exemption, courts first make findings of fact. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (*citing Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990)).   Based on those facts, it must then draw inferences "applying the regulations and interpretations promulgated under 29 U.S.C. § 213(a)(1)." *Id.*  Finally, the court makes the "ultimate determination of whether an employee was exempt." *Id.*

The highly compensated employee exemption applies to employees (1) who have a "total annual compensation of at least $100,000.00" (which must include at least $455.00 per week paid on a salary or fee basis), and (2) who regularly and customarily perform at least one of the duties of an executive, administrative, or professional employee.  29 C.F.R. § 541.601(a), (b)(1); *see also Bollschweiler v. El Paso Elec. Co.*, 166 F. Supp. 3d 808, 815 (W.D. Tex. 2016) (*citing Zannikos v. Oil Inspections (USA), Inc.*, 605 F. App'x 349, 359 (5th Cir. Mar. 27, 2015)); *Guyton v. Legacy Pressure Control*, No. 5:15-cv-1075-RCL, 2017 U.S. Dist. LEXIS 7836, at *4 (W.D. Tex. 2017); *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2012 U.S. Dist. LEXIS 193240, at *45 (W.D. Tex. 2012).   "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties."  29 C.F.R. § 541.601(c). The $100,000 threshold can include commissions and certain bonuses.  *See* 29 C.F.R. § 541.601(b)(1).   The $100,000 requirement is satisfied for a year in

which the employee works less than the full year if he is paid a *pro rata* portion of the $100,000 based on the period of time he worked.  *See* 29 C.F.R. § 541.601(b)(3).

Furthermore, an employee may qualify as highly compensated if, for example, the employee "customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under § 541.100."  29 C.F.R. § 541.601(c)*; see, e.g., Bollschweiler*, 166 F. Supp. 3d at 815; *Guyton*, 2017 U.S. Dist. LEXIS 7836, at *4; *Benavides* 2012 U.S. Dist. LEXIS 193240, at *45; *Carranza v. Red River Oilfield Servs., LLC*, No. H-15-3631, 2017 U.S. Dist. LEXIS 11182, at *4 (S.D. Tex. 2017) (plaintiff worked as a highly compensated employee when he earned over $100,000 and performed duties of the executive exemption); *Zannikos v. Oil Inspections (USA), Inc.*, 605 F. App'x 349, 459-60 (5th Cir. 2015) (plaintiff worked as a highly compensated employee when he earned over $100,000 and performed duties of the administrative exemption); *Allen,* 846 F. Supp. 2d at 710-12, 715 (granting summary judgment on an overtime claim because plaintiff was a highly compensated employee).

### 1.     Galvan earned more than $100,000 per year as a Service Supervisor.

In this case, it is uncontroverted that Galvan satisfied the compensation test of the highly compensated employee exemption.  In the years that Galvan worked as a Service Supervisor I and II, he made more than $100,000 on an annual basis.  App. 17 (Galvan Dep. at 64:20-23).  In 2014, Galvan exceeded the compensation threshold in 10 months, earning $108,620.52 from March to December.  *Id.*; App. 54 (Dep. Exh. 12). In 2015, Galvan earned $130,445.26.  *Id.*; App. 55 (Dep. Exh. 13).  Galvan received a pay check every two weeks and earned significantly more than $455 per week in salary during his employment as a Service Supervisor.  *Id.;* App. 54-55 (Dep. Exhs. 12-13).

      2.      <u>Galvan regularly and customarily performed at least one of the duties of an executive employee.</u>

In addition to satisfying the compensation test, Galvan also regularly and customarily performed at least one of the duties of an executive employee.  The executive exemption duties test is satisfied when the following criteria are met:  (1) the employee's primary duty is "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (2) the employee "customarily and regularly directs the work of two or more other employees;" and (3) the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).  Here, Galvan satisfies at least the first and second prongs of the duties test.

      3.      <u>The "Silver" and "Red" crews were a recognized subdivision of FTSI, and managing it was Galvan's primary duty.</u>

FTSI organizes well completion employees into independent "crews," each usually comprised of a Service Supervisor, a field engineer, 1-2 Mechanics, an E-Tech, and 10-15 Equipment Operators.  App. 19 (Galvan Dep. 72:18-73:4).  Crews perform their well completion functions at customer locations and typically work in a general geographical location.  App. 59 (Thornton Decl. at ¶ 2).

As a matter of law, a unit of business that has a "permanent status and function" is a recognized department or subdivision. 29 C.F.R. § 541.103(a).  "A recognized department or subdivision may move from place to place and the subordinate personnel may change, as long as the 'unit' has a continuing function." *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d 678, 708 (S.D. Tex. 2012) *aff'd*, 755 F.3d 279 (5th Cir. 2014) (internal quotations and citations omitted).  Galvan's Red and Silver Crews were separate and independent units with a permanent status and

function.   App. 59 (Thornton Decl. at ¶ 3); 29 C.F.R. § 541.103(a); *King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 782 (S.D. Tex. 2014) (holding that a sales team was a recognized unit or subdivision of the company); *Allen*, 846 F. Supp. 2d at 708 (finding that field service units that moved from place to place to perform customer projects were a customarily recognized subdivision).

Next, FLSA regulations define "primary duty" as the "principal, main, major or most important duty," which is determined "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  A non-exhaustive list of factors to be considered when determining the primary duty include: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.[1]"  *Id.* While the time spent on a duty is only one factor, an employee who spends more than 50% of his time on exempt work typically satisfies the primary duty test. 29 C.F.R. § 541.700(b); *Allen*, 846 F. Supp. 2d at 707.

Executive employees have management as a "primary duty." 29 C.F.R. § 541.100(a)(2). "Management" duties include but are not limited to ". . . directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; . . . planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or

---

[1] Because of Plaintiff's supervisory position, FTSI paid him more and provided him superior employment benefits than members of his crew, including use of an FTSI-issued vehicle, cell phone, and computer.  App. 13 (Galvan Dep. at 47:25-48:8, 48:19-21).  FTSI also paid Plaintiff bonuses, which were not paid to hourly employees on his crew. App. 12 (Galvan Dep. at 44:23-45:13).

tools to be used . . . and providing for the safety and security of the employees or the property. . . ." 29 C.F.R. § 541.102.

As a Service Supervisor, Galvan was the one "running the show." App. 12 (Galvan Dep. at 42:18-25).  As the most senior operations employee on each job, he was the lead on the crew and made sure the jobs ran smoothly and the equipment operators were doing their jobs.  App. 13-14, 22 (Galvan Dep. at 46:18-22; 53:19-23; 83:2-4). In fact, he was the only employee on the crew trained to actually treat the well from the data van.  App. 16 (Galvan Dep. at 59:4-14). Galvan ran jobs and crews with little to no supervision.  App. 14 (Galvan Dep. at 52:1-21) (Galvan's supervisor was on the job site less than 50% of the time and even when Galvan's supervisor visited the jobsite, Galvan performed the same supervisory duties he performed in his supervisor's absence).

Importantly, Galvan also had day-to-day supervisory control on his crew, as he:

- Made the day-to-day decisions on jobs (App. 12 (Galvan Dep. at 42:18-25));
- Ensured the safety of crew and company equipment (App. 22-23 (Galvan Dep. at 88:17-89:3 and 83:5-18));
- Communicated with the on-site customer representative (App. 20 (Galvan Dep. at 74:14-23));
- Communicated with management regarding his crews daily performance (App. 25 (Galvan Dep. at 94:22-96:1)); and
- Reported hours to Field Coordinator for all employees on his crew (App. 26 (Galvan Dep. at 99:15-19)).

When presented with similar facts in similar cases, courts have had little difficulty in determining that the employees in question qualified for the Executive exemption.  For example, *Allen v. Coil Tubing Servs., LLC* involved overtime claims brought by a service supervisor who led CTS's well-service projects on client sites and supervised a group of service technicians.  In that case, the court explained that:

> [a service supervisor's] managerial responsibilities while in the field performing CTS's projects for customers were extensive and of primary importance to CTS. For instance, as [a service supervisor], he was the

> senior CTS employee on all projects to which he was assigned in the field, whether on land or offshore, and [he] planned, assigned, and managed the work of the [service technicians] at the project sites to which he was assigned.

*Allen*, 846 F. Supp. 2d at 707.  As a result, the court concluded that plaintiff's primary duties were managerial. *Id*.  The result should be the same here.

### 4.    Galvan directed the work of two or more full-time employees.

The third requirement for the executive exemption's duties test is that the employee "customarily and regularly directs the work" of at least two other employees.  Galvan "customarily and regularly" directed the work of the Silver and Red crews.  Indeed, throughout his employment with FTSI, Galvan directed the work of at least two other full-time hourly employees.[2]  App. 22-23 (Galvan Dep. at 85:25-86:5).  As the highest-ranking on-site employee, Galvan supervised and directed the well completions work of others on his crew.  *Id.* In fact, because he was the only crew member trained to treat the well, Galvan was solely qualified to run the job and direct the work of his subordinates.  App. 16 (Galvan Dep. at 59:9-11).  Galvan made the day-to-day decisions regarding the work of his employees and the job from the data van.  *Id*. at 60:12-25.   In short, on every job that Galvan ran, he "exercised meaningful discretionary oversight" over the members of his crew.  *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2007 WL 2900577, at *24 (S.D. Tex. Sept. 30,  2007),  *aff'd*,  299  F. App'x 315  (5th  Cir. 2008)  (granting  summary judgment on overtime claims where defendant showed, in part, that plaintiff directed work of subordinates by ensuring that they complied with policies and protocols); *see also Allen*, 846 F. Supp. 2d at 709 (determining that plaintiff satisfied this element, as the highest-ranking employee on field projects who ran the projects and supervised at

---

[2] Galvan's crew usually included 10-15 hourly employees.  App. 19 (Galvan Dep. 72:18-73:4).

least two employees).  Accordingly, Galvan meets the requirement that he directed the work of two or more hourly employees.

For all of the reasons above, FTSI has satisfied its burden to demonstrate that Galvan falls within the highly compensated employee exemption to the FLSA.  Therefore, FTSI is entitled to summary judgment that the highly compensated employee exemption applies.

## V.   CONCLUSION

While working at FTSI, Plaintiff ran FTSI's well completion jobs on customer work sites and regularly managed a crew of 10-15 hourly employees.  He had no doubt when he took the job, nor when he was working in it, that he was being paid appropriately.  But after earning over $265,000 in less than 24 months as a Service Supervisor, Galvan now wrongfully asks this Court to award him tens of thousands more in back overtime pay and liquidated damages.  Instead, because he qualifies as a highly compensated employee, Galvan's FLSA claim should be dismissed with prejudice.

Respectfully submitted,

/s/ *John B. Brown*

John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone: 214-987-3800
Facsimile:  214-987-3926

AND

Ryan M. Miller
Texas Bar No. 24070281
ryan.miller2@ftsi.com
**FTS INTERNATIONAL SERVICES, LLC**
777 Main Street, Suite 3000
Fort Worth, TX 76102
Telephone: 817-339-3696

**ATTORNEYS FOR DEFENDANT**
**FTS INTERNATIONAL SERVICES, LLC**

## CERTIFICATE OF SERVICE

On March 2, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *John B. Brown*

John B. Brown

28925290.1