IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| JOSEPH GALVAN, § | |
| *Plaintiff*, § | |
| § | |
| v. § | No. MO:16-CV-00147-RAJ |
| § | |
| FTS INTERNATIONAL SERVICES, LLC, § | |
| *Defendant*. § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant FTS International Services, LLC's ("Defendant") Motion for Final Summary Judgment. (Doc. 8). Plaintiff Joseph Galvan ("Plaintiff") filed this Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") case for unpaid overtime against his former employer, FTS International Services, LLC. (Doc. 1). For the reasons set forth below, Defendant's Motion for Summary Judgment shall be **DENIED**. (Doc. 8).

### I. BACKGROUND

Defendant is an oilfield services company that provides oil and gas well completion services. (Doc. 1 at 2). Defendant hired Plaintiff as an Equipment Operator I on March 26, 2012. (Doc. 10-1 at 6). Plaintiff resigned from his employment with Defendant in April 2016. (*Id.*). Defendant promoted Plaintiff six times between March 2012 and April 2016 from Equipment Operator I to the following positions: Equipment Operator II and III, Fluid Technician I, Service Supervisor in Training, and Service Supervisor I and II. (*Id.* at 48–53). As a Service Supervisor, Plaintiff received a starting annual base salary of $75,000 plus bonuses. (*Id.* at 12).

On June 10, 2016, Plaintiff filed his Complaint alleging Defendant improperly classified him as a salaried employee exempt from the FLSA's overtime requirements. (Doc. 1 at 2). Plaintiff alleges he was "made to work far in excess of forty (40) hours per week, sometimes even as many as 100 or more hours in a week; however, he was paid for only forty (40) hours each week." (*Id.*).

Plaintiff seeks to recover the amount of his unpaid wages and overtime compensation, an additional equal amount as liquidated damages, prejudgment interest, attorneys' fees and costs. (*Id.* at 7).

On March 2, 2017, Defendant filed its Motion for Final Summary Judgment, Brief in Support, and Appendix to Brief. (Docs. 8, 9, 10). Defendant moves for summary judgment on the grounds that Plaintiff was exempt from overtime under the FLSA's highly-compensated employee exemption, 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.601(a). (Doc. 8 at 1). On March 14, 2017, Plaintiff filed his Response arguing that the Court should deny Defendant's Motion for Summary Judgment because he has raised a genuine issue of material fact from which a reasonable jury could determine that Plaintiff's primary duties did not include office or non-manual labor, thereby precluding the applicability of the highly-compensated employee exemption. (Doc. 11 at 1).

## II. LEGAL STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does

2

exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

Defendant argues that Plaintiff is exempt from the FLSA's overtime provisions under the highly-compensated employee exemption. Generally, whether an employee is exempt from the FLSA's overtime compensation provisions is a question of fact. *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Id.* The employer bears the burden of proof to show that an exemption applies to the complaining employee and that burden is by a preponderance of the evidence that the exemption is "plainly and unmistakably" applicable. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). The statutory exemptions are further construed narrowly against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002). Job titles are not determinative; rather, it is the employee's salary and primary duties that determine his qualification as an exempt employee. 29 C.F.R. §§ 541.2, 541.700(a).

Here, Defendant argues that Plaintiff was exempt from FLSA overtime pay under the highly-compensated employee exemption. (Doc. 8). Defendant attaches Plaintiff's Deposition (Doc. 10-1) and the Declaration of Karen Thornton, Defendant's Vice President of Human Resources, in support of its Motion for Summary Judgment. In response, Plaintiff contends Defendant has not shown as a matter of law that the highly-compensated employee exemption applies to him. (Doc. 11). Plaintiff

attaches his own declaration to his Response. (Doc. 11-1). The Court relies only upon the competent summary judgment evidence contributing to the following discussion.

A.     **Factual Summary**

Plaintiff claims that as a Service Supervisor he "was essentially an oilfield mechanic or laborer or technician who spent the majority of his working hours performing manual labor on various oilfield projects; the vast majority of his time was spent 'in the field' or 'on site,' not in an office." (Doc. 1 at 3). Plaintiff asserts he "had no authority to hire or fire any other FTS employee." (*Id.*). Further, Plaintiff alleges he "received total annual compensation of less than $100,000.00 per year." (*Id.*). According to Plaintiff, management was not his "primary duty; nor were Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or other change of status of other employees given particular weight." (*Id.*). Plaintiff states he "was not in charge of any department or subdivision of the company." (*Id.*). Rather, "Plaintiff's work for Defendant involved primarily, and most importantly, manual labor performed in the field[.]" (Doc. 11 at 2).

Defendant concedes that Plaintiff performed manual labor "to lead by example and demonstrate techniques or to assist on an emergency basis." (Doc. 9 at 6). As a Service Supervisor, Plaintiff was a member of a crew of employees designated by color and assigned to a particular customer. (Doc. 10-1 at 15). The color-coded crews were subdivided by number according to the shift worked, such as "red crew 1" and "red crew 2" and the crews worked 12-hour shifts while at the customer's job site. (*Id.* at 15). The members of the crew typically included ten to fifteen equipment operators, one or two service supervisors, an engineer, one or two mechanics and an e-tech. (*Id.* at 19).

The field coordinator supervised the crews and Defendant assigned each crew its own field coordinator for supervision. (*Id.* at 12). The field coordinator was in the field every day with the crew and was available by phone any time day or night. (*Id.* at 14). The field coordinator directed Plaintiff and the rest of the crew regarding when to arrive at the well site, how to get to the well site,

4

and what equipment to bring to the well site. (*Id.* at 21, 26–27). The field coordinator would report the crew's hours to Defendant at the end of each week. (*Id.* at 11). Finally, the field coordinators were responsible for promoting and demoting crew employees. (*Id.* at 13).

Plaintiff's field work on the crew included making sure the equipment was running and providing maintenance for Defendant's equipment. (*Id.* at 20). As a Service Supervisor, Plaintiff's role during each stage of Defendant's operation was "treating," or controlling the pumps that drive the fluids used in the fracking process. (*Id.* at 16). The pumps were operated by computers located inside a data van and could be accessed from an outdoor piece of equipment called a blender. (*Id.*). Plaintiff estimates he was in the data van 50% of operational time. (*Id.* at 30). If there were problems with the equipment, Plaintiff worked on the equipment outside rather than working in the data van. (*Id.*). In addition, if a second service supervisor was on site, which was about half the time, Plaintiff worked outside with the rest of the crew rather than inside the data van. (*Id.* at 31).

At the completion of each stage of operation, Plaintiff worked outside on the pumps changing valves, seats and packings. (*Id.* at 22). Plaintiff also worked with the crew in "rigging up," or setting up the equipment at the customer's well site, which could take several days depending on the job. (*Id.* at 27). Likewise, Plaintiff worked with the crew in "rigging down," or breaking down the equipment at the end of a job for removal from the job site. (*Id.* at 28).

**B.    Highly-Compensated Employee Exemption**

According to the Department of Labor regulations implementing the FLSA, the highly-compensated employee exemption is defined as follows:

> An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part.

29 C.F.R. § 541.601. Under this section, high compensation offsets some of the more detailed job duty considerations of the executive and administrative exemptions, such that, for example,

supervision of at least two other employees may be sufficient to qualify for the exemption without the necessity of considering the other factors of that exemption. 29 C.F.R. § 541.601(c). It is important, however, that the employee's primary duties be office-related or non-manual. 29 C.F.R. § 541.601(d).

Plaintiff argues that the evidence offered by Defendant is insufficient to meet Defendant's burden of proving that Plaintiff's duties were non-manual in nature. (Doc. 11 at 7). The phrase "primary job duty" means the principal, main, major or most important duty that the employee performs. 29 C.F.R. § 541.700(a). The "employee's primary duty will usually be what he does that is of principal value to the employer." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990). Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a).

Although time alone is not the sole test, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d 678, 707 (S.D. Tex. 2012), *aff'd*, 755 F.3d 279 (5th Cir. 2014). The "amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). The highly-compensated employee exemption applies only to employees whose primary duty includes performing office or non-manual work, for example: non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their

hands, physical skill and energy are not exempt under this section no matter how highly paid they might be. 29 C.F.R. § 541.601(d).

Plaintiff argues the work he performed places him in the category of workers that primarily perform manual labor involving repetitive operations with their hands, physical skill and energy. (Doc. 11 at 8). Plaintiff's job duties involved rigging up, rigging down, loading, unloading, and maintaining and repairing Defendant's equipment outside in the oilfield. (Doc. 10-1). The Court finds that there is a genuine issue of material fact regarding whether the highly-compensated employee exemption applies to Plaintiff because he performed manual labor. Since Service Supervisors are not specifically addressed in the FLSA regulations, as opposed to, for example, carpenters, electricians, and mechanics, 29 C.F.R. § 541.601(d), the determination of whether Plaintiff is a manual laborer ineligible for the highly-compensated employee exemption is a fact-intensive analysis. Because the highly-compensated employee exemption may not be applied as a matter of law in the face of disputed evidence, the Court **DENIES** Defendant's Motion for Summary Judgment. (Doc. 8).

### IV. Conclusion

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment with respect to the highly-compensated employee exemption. (Doc. 8).

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment is hereby **DENIED**. (Doc. 8).

It is so **ORDERED**.

SIGNED this _21st_ day of _March_ 2017.

ROBERT A. JUNELL
Senior United States District Judge