IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

**JOSEPH GALVAN**                                                   **PLAINTIFF**

**v.**                                             **CAUSE NO. 7:16CV147-LG-DC**

**FTS INTERNATIONAL SERVICES, LLC**                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

BEFORE THE COURT is the [15] Motion for Partial Summary Judgment as to Exemption Defenses filed by Plaintiff Joseph Galvan in this Fair Labor Standard Act case. The issues have been fully briefed. After due consideration of the submissions and the relevant law, it is the Court's opinion that there are questions of material fact for the jury concerning application of the highly-compensated employee and administrative exemptions of the FLSA. Summary judgment will be denied as to those exemptions. However, Defendant FTS International Services, LLC, does not contest Galvan's argument that the executive exemption does not apply to him. Accordingly, summary judgment as to this affirmative defense will be granted and FTS's claim to the executive exemption dismissed.

**I.   BACKGROUND**

Defendant FTS is an oilfield services company that provides oil and gas well completion services. (Compl. 2, ECF No. 1). FTS hired Galvan as an Equipment Operator I on March 26, 2012, and promoted him six times before he resigned from

his position as a Service Supervisor in April 2016. (*Id.*). As a Service Supervisor, Galvan received a starting annual base salary of $75,000 plus bonuses. (*Id.* at 12).

Shortly after resigning from FTS, Galvan filed his Complaint alleging FTS improperly classified him as a salaried employee exempt from the FLSA's overtime requirements. (*Id.* at 2). Galvan alleges he was "made to work far in excess of forty (40) hours per week, sometimes even as many as 100 or more hours in a week; however, he was paid for only forty (40) hours each week." (*Id.*). He seeks to recover the amount of his unpaid wages and overtime compensation, an additional equal amount as liquidated damages, plus prejudgment interest, attorneys' fees, and costs. (*Id.* at 7).

In an earlier-filed summary judgment motion, FTS argued that it was exempt from the FLSA's overtime provisions under the highly-compensated employee exemption. Galvan argued in response that he was in the category of workers who primarily perform manual labor involving repetitive operations with their hands, physical skill and energy, and that these workers are not exempt under this section no matter how highly paid they might be. *See* 29 C.F.R. § 541.601(d). The Court determined there was a question of material fact regarding whether the highly-compensated employee exemption applies to Galvan, and that it could "not be applied as a matter of law in the face of disputed evidence." (Order Denying Def. Mot. Summ. J. 7, ECF No. 14). "Since Service Supervisors are not specifically addressed in the FLSA regulations, as opposed to, for example, carpenters, electricians, and mechanics, 29 C.F.R. § 541.601(d), the determination of whether

Plaintiff is a manual laborer ineligible for the highly-compensated employee exemption is a fact-intensive analysis." (*Id.*).

In the Motion currently before the Court, Galvan requests summary judgment striking three exemptions claimed by FTS as affirmative defenses: 1) the executive exemption; 2) the administrative exemption; and 3) the highly-compensated employee exemption.  FTS does not object to striking its executive exemption affirmative defense, (Def. Resp. 1 n.1, ECF No. 18), making further discussion of the executive exemption unnecessary.

## II.   DISCUSSION

Generally, whether an employee is exempt from the FLSA's overtime compensation provisions is a question of fact.  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000).  "However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law."  *Id.*  The employer bears the burden of proof to show that an exemption applies to the complaining employee and that burden is by a preponderance of the evidence that the exemption is "plainly and unmistakably" applicable.  *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013).  The statutory exemptions are construed narrowly against the employer.  *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002).  Job titles are not determinative; rather, it is the employee's salary and primary duties that determine his qualification as an exempt employee.  29 C.F.R. §§ 541.2, 541.700(a).

a. <u>The Highly Compensated Employee Exemption</u>

For the time period at issue in this lawsuit, the FLSA provided that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(a) (2004) (amended May 23, 2016). This exemption "applies only to employees whose primary duty includes performing office or non-manual work." § 541.601(d). The employee need not meet all of the requirements of executive, administrative, or professional employees, however. *See* § 541.601(c). "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.*

Galvan argues first that FTS cannot prove that he was highly compensated, given that the highest yearly base salary he ever earned was $84,218. (Pl. Mot. Ex. 3, ECF No. 15-3). He contends that it is only after his bonuses are included that his earnings rise above the $100,000 threshold. Although the statutory threshold includes "commissions, nondiscretionary bonuses and other nondiscretionary compensation," 29 C.F.R. § 601(b)(1), Galvan contends that his bonuses should not be included, because they were discretionary. His reasons are: 1) the offer letter setting out his compensation package does not refer to bonuses; and 2) he did not receive a written bonus plan.

A discretionary bonus is one in which "both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the

employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3). Thus, regular bonuses are to be included in the calculation of regular rate of pay, 29 C.F.R. § 778.209, but discretionary bonuses are excludable from the regular rate of pay, § 778.211.

Galvan testified that his total compensation was more than $130,000 in both 2014 and 2015. (Def. Resp. App. Ex. 1 64-65, ECF No. 19-1). Although the parties agree that Galvan received bonuses, there is very little evidence of the nature of the bonuses. A 2015 letter offering Galvan a promotion to Service Supervisor II notes an annual base salary of $84,218, but there is no mention of bonuses. (Pl. Mot. Ex. 3, ECF No. 15-3). This evidence could indicate that the bonuses were purely discretionary. On the other hand, Galvan testified that his bonuses were based on successful completion of "stages" during his own and other shifts. (Def. Resp. App. Ex. 1 114-15, ECF No. 19-1). This evidence could indicate that the bonuses were calculated on a predetermined basis, causing employees to expect them regularly. The jury, rather than the Court, must resolve this contradictory evidence concerning the discretionary nature of Galvan's bonuses.

As for the nature of Galvan's job responsibilities, it has been noted that oil field workers are difficult to classify, as "neither Congress nor the Fifth Circuit have definitively determined whether oil field operators are manual laborers, and because courts within this Circuit have reached different conclusions." *Guyton v. Legacy Pressure Control*, No. 5:15cv1075-RCL, 2017 WL 244868, at *4 (W.D. Tex.

Jan. 18, 2017). A determination depends on the specific factual circumstances presented in each case. *See id.*, at *3 (describing cases). In its Order Denying Defendant's Motion for Summary Judgment (ECF No. 14), this Court reviewed the same facts concerning Galvan's job responsibilities that the parties re-argue here. Although the Court has authority to modify or rescind its orders at any time prior to entry of a judgment, *see* Fed. R. Civ. P. 54(b), the parties present no reason to do so in this case. Thus, for the reasons stated in its previous Order denying summary judgment, the Court finds there is a question of material fact regarding whether Galvan is a manual laborer ineligible for the highly-compensated employee exemption. Summary judgment on the issue of application of the highly-compensated employee exemption will be denied.

    b. The Administrative Exemption

The FLSA's overtime provisions "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). Employees fall within the administrative exemption if they meet the following criteria:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (amended May 23, 2016).

There is no dispute that FTS paid Galvan more than $455 per week. The parties' arguments concern the last two criteria of the administrative exemption. Galvan claims that the administrative exemption does not apply to him "for the obvious reason that his work for the Defendants was primarily manual and physical – not 'office or non-manual.'" (Pl. Mot. 11, ECF No. 15). Relying on his deposition testimony and affidavit, Galvan contends his time was divided

> between running pumps from inside a data van and turning wrenches on equipment outside. The data van was a modified semi trailer that was hauled to the well with a semi, along with all of Defendant's other equipment, and remained attached to the semi while on site. Like the rest of the work site, the data van was a noisy, dirty environment where Mr. Galvan was required to wear protective equipment such as steel-toed shoes and fire retardant clothing. The work Mr. Galvan performed in the data van was manual – driving sand and fluid into wells by sending signals to the pump with a computer mouse.

(*Id.* at 12) (citations omitted).

> In contrast, FTS provides evidence that Galvan's primary duties were to:
>
> (1) run the day-to-day operations on a job location (or "pad") by providing on-site supervision; (2) act as FTSI's representative in dealing with customers on site; (3) oversee all crew job activities from home base to servicing at the job locations to returning to home base; and (4) perform non-manual work in the data van.
> . . .
> Galvan was not expected to routinely perform manual labor. Instead, Galvan was expected to perform manual labor only to lead by example and demonstrate techniques or to assist on an emergency basis.

(Def. Resp. App. Ex. 2, at 1, 2 (¶¶ 4, 7), ECF No. 19-2).

This conflicting evidence highlights a question of material fact concerning whether Galvan's primary duty was the performance of office or non-manual work – the second criteria for application of the administrative exemption.

7

Galvan also contends that FTS cannot show a question of material fact concerning the third criteria – whether his primary job duties included the exercise of discretion and independent judgment with respect to matters of significance. He argues "there is no evidence that he exercised discretion or independent judgment in his work – no contracts or purchase orders bearing his signature, and no policies or procedures allegedly authored by him." (Pl. Mot. 14, ECF No. 15).

FTS argues that the regulation encompasses more than creating contracts or policies, and since Galvan directed the work of his crew and controlled the well-treatment services on the job site, he worked on matters of significance to FTS. FTS's evidence is that

> Service Supervisors are usually the highest ranking operations employee on the job site. Service Supervisors are expected to keep their Field Coordinator, whether on or off site, informed about the status of the job and supervise all operations employees. Service Supervisors continue to supervise the Equipment Operators even while their Field Coordinator is on the job site.
>
> Service Supervisors direct the work of Equipment Operators (direct chain of command for day-to-day operations), lead safety meetings, answer questions from Equipment Operators, enforce company policies, and have the authority to stop work.
>
> A Service Supervisor's supervisory responsibilities include assisting in and making recommendation regarding training, scheduling of work, performance counseling, promotions, demotions and termination of employment. Service Supervisors also ensure that all relevant Human Resources and HSE policies and procedures are followed and adhered to.

(Def. Resp. App. Ex. 2, at 2 (¶¶ 6, 10, 11), ECF No. 19-2).

To qualify for the administrative exemption, "an employee must perform work directly related to assisting with the running or servicing of the business, as

distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The former category includes "work in functional areas such as . . . quality control; . . . safety and health; . . . [and] legal and regulatory compliance . . . ." § 541.201(b). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." § 541.202(a).

> Factors to consider . . . include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; . . .

29 C.F.R. § 541.202(b).

FTS's description of Galvan's job duties shows there is evidence from which a jury could conclude that Galvan was essentially running an aspect of FTS's business with significant decision-making authority while he was the Service Supervisor on a job site. As there are questions of material fact for the jury, summary judgment on the issue of application of the administrative employee exemption will be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [15] Motion for Partial Summary Judgment as to Exemption Defenses, filed by Plaintiff Joseph

Galvan, is **GRANTED** as to FTS's affirmative defense of the executive exemption. FTS's executive exemption affirmative defense is **DISMISSED**. Plaintiff's Motion is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 7th day of June, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE